**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| | * | |
| v. | * | 1:14-CR-00427-ELR |
| | * | |
| RODRICUS MARTIN | * | |
| | * | |

_____

**O R D E R**

_____

This matter is before the Court for consideration of Magistrate Judge Russell G. Vineyard's Report and Recommendation ("R&R") (Doc. No. 34). Importantly, Judge Vineyard recommends that Defendant's Motions to Suppress (Doc. Nos. 15 & 16) be denied and that this case be certified Ready for Trial. In the time period allotted for the parties to object to the R&R, Defendant, by and through counsel, filed several objections to the R&R. (See Doc. No. 35.)

### I.   STANDARD OF REVIEW

The district court reviewing an R&R "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If neither party objects, the district judge need only review the R&R for clear error and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." Id. Notably, a party objecting to an R&R "must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted).

## II. ANALYSIS

Defendant makes three particularized objections to the R&R, and the Court considers each in turn.

### a. *Timing of the Knock And Announce*

Defendant's first objection is to the Magistrate's finding that officers with the Atlanta Police Department ("APD") breached Martin's door six seconds after announcing their presence. Defendant contends that this is contrary to the evidence, and asserts that the video demonstrates that the knock and announce was virtually simultaneous to the beginning of the breach of the door. (See Doc. No. 35, p.1.) A review of the video recording of the entry indicates that at 1:47, an officer shouts "Atlanta police, search warrant." At 1:48, officers have attached a crow bar to the burglar bars of the outer door and, at 1:51, they pry the outer door open. At this point, the same officer again announces "Atlanta police, search warrant." By 1:56, the officers begin an attempt to force open the second door by way of some sort of battering ram. Regardless of whether the breach happened in six or four seconds, however, approximately nine second elapsed between the

initial announcement and the use of the battering ram to breach the front door. Thus, this Court agrees with the ruling in the R&R that the procedures employed in this case do not constitute a violation of the knock and announce requirements.

Further, Defendant merely objects to the finding of six seconds having elapsed between the announcement and the breach, and he does not attempt to argue that a shorter time frame would support suppression of anything found in the house. This is likely because, as the R&R explains and as Martin has conceded, a violation of knock and announce will not support the exclusion of evidence found during the search. See Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). Accordingly, Defendant's objection to the holdings of the R&R with respect to the knock and announce is **OVERRULED**.

    b. *Sufficiency of Probable Cause to Support Search Warrant*

Next, Martin objects to Judge Vineyard's analysis of the sufficiency of the search warrant affidavit. He argues the information provided by the Confidential Source in this case (the "CS") was never independently corroborated by police, and that there is no information about the CS's reliability. Therefore, Martin argues, the search warrant was not properly supported by probable cause, and any evidence obtained as a result of the search is due to be suppressed. The Court disagrees.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170

3

F.3d 1350, 1352 (11th Cir. 1999). The decisions of lower courts in determining probable cause are afforded "great deference." <u>Illinois v. Gates</u>, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 257 (1983); <u>U.S. v. Gonzalez</u>, 940 F.2d 1413, 1419 (11th Cir. 1991). The Supreme Court has warned against hyper-technical reviews of search warrant affidavits. <u>Gates</u>, 462 U.S. 213. Rather, magistrates should make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238, 103 S. Ct. at 2332. In turn, reviewing courts must simply "ensure that the magistrate had a 'substantial basis'" for finding probable cause. <u>Id.</u>

In this case, a CS who was cooperating with APD made two controlled purchases of crack cocaine; once on April 2, 2014, and once on April 17, 2014. In both cases, the CS was searched beforehand, briefed on the operation, provided the funds with which to buy the drugs, and, after the purchase, turned the purchased substance over to APD officers. Both times, the substance bought by the CS field tested positive for crack cocaine. After each purchase, the CS was searched again, and then debriefed. Officers observed the informant walking up to the front door, entering the home, and exiting. Furthermore, Investigator Gary Walker, Jr. had conducted surveillance of the house on multiple occasions after having received a report about possible drug trafficking at that location. During his various periods of

4

surveillance, Inv. Walker observed a heavy set black male at the residence, and on one occasion he observed vehicle and pedestrian traffic. After the first controlled buy, the CS reported that there was a black male inside the house who provided the drugs. The informant further advised that the man had a black handgun in his possession. Inv. Walker obtained a search warrant for the home based on his observations during his periods of surveillance and during the two controlled purchases which resulted in the recovery of crack cocaine.

In Brundidge, the Eleventh Circuit observed that independent police corroboration of CS-provided information has never been a *per se* requirement for a finding of probable cause. Rather, as explained above, courts are permitted to consider multiple factors, and should utilize a flexible standard to determine whether there is a fair probability that contraband will be found in a given location. This Court does not understand Judge Vineyard's R&R to hold that whenever a CS claims to have observed illegal wrongdoing firsthand, there is a presumption of veracity. Rather, it takes note that independent corroboration is not an absolute requirement and, in light of the other facts of this case, the search warrant was supported by probable cause. Additionally, "[a] defendant has the burden to make a 'substantial preliminary showing' to attack the veracity of an affidavit in support of a search warrant." United States v. Thomas, 159 Fed. Appx. 979, 982 (11th Cir. 2006). Martin has failed to make the required showing. As the R&R correctly notes, this is not an occasion where a CS was a source of information which

5

prompted the initiation of an investigation. Rather, an investigation was ongoing, and APD utilized their informant to assist in that investigation. Considering the totality of the circumstances and the facts contained in the affidavit, the Court finds that the search warrant was supported by probable cause. Accordingly, Martin's objection on this point is also **OVERRULED**.

    c. *Motion to Suppress Statements*

Finally, Martin objects to the denial of his Motion to Suppress Statements (Doc. No. 15), arguing that the evidences show he made no voluntary waiver of his rights before speaking to police. In United States v. Jones, 32 F.3d 1512 (11th Cir. 1994), the Eleventh Circuit explained that determining the admissibility of post-arrest confessions requires a two step inquiry. First, the Court must decide whether the police complied with the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966). If so, it must then determine whether the confession was voluntary. Jones, 32 F.3d at 1516. Here, there is no argument that police did not advise Martin of his Miranda rights; the sole contention is whether Martin's statements were voluntarily made after a knowing, intelligent waiver of those rights. In determining whether statements are made voluntarily, courts consider the totality of the circumstances, and look to whether the statement was a product of the accused's 'free and rational' choice. Jones, 32 F.3d at 1516 (quoting U.S. v. Vera, 701 F.2d 1349, 1364 (11th Cir. 1983). The Supreme Court of the United States has held that the voluntariness of a Miranda waiver depends not on

the free will of the suspect, but on the presence or absence of coercive behavior by the government. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice." U.S. v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992) (citations omitted). The burden is on the government to establish voluntariness of a confession by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 674 (1986).

 Martin objects to the recommendation that the motion to suppress statements be denied, arguing that there was no knowing, voluntary, and intelligent waiver of his right to remain silent and his right to counsel. In support of his objection, Martin asserts that he told police that his head was not feeling right, and that the police themselves observed him in need of medical attention during their interrogation. Martin argues that police insisted on questioning him prior to the arrival of paramedics, and that any statements made while he was in need of medical attention should be suppressed. Notably, Martin cites no law in support of his objection, instead stressing heavily the importance of an opportunity to calmly and soberly reflect upon the constitutional rights being waived.

There is no dispute that Martin was in custody when he made the statements now sought to be suppressed. The video of his interrogation (Gov. Ex. 1) reflects that an officer clearly informed Martin of his Miranda rights before beginning to question him. (Gov. Ex. 1 at 00:50-1:23.) Martin calmly indicated that he understood the rights, and that he would agree to speak with the officers. (Id. at 01:20-01:26.) He then confirmed that there were drugs in the house, but stated that he was unaware of the amount. He also confirmed that everything in the house was his, including guns. Throughout the interview, Martin calmly replied to all inquiries put to him by law enforcement, and he did not request medical assistance.

The police informed Martin that they were trying to get an ambulance on scene as soon as possible. (Id. at 5:10) At that point, he told the officers that they could look into his eyes and see that his pupils were not dilated, apparently indicating that he had not ingested any drugs. After this exchange, he sat quietly for several minutes without being asked any questions. (Id. at 5:30-8:03) One officer asked if he was feeling better, then explained to Mr. Martin that his behavior was consistent with that of someone who has swallowed a large amount of drugs, and that this was the basis for their concern and desire to get paramedics on scene. (Id. at 9:33-9:53.) At 18:09-18:30, the video shows Mr. Martin being escorted to an ambulance, where he denied medical treatment.

During the entire exchange, police did not yell at Martin; they did not threaten, cajole, coerce, or demand any answers to their questions. No one ever

8

attempted to promise him anything in exchange for waiving his rights. When Martin declined to say where he got the drugs from, the questioning officer did not press him on the issue. Martin immediately answered in the affirmative when asked if he understood his Miranda rights, and immediately indicated he was still willing to answer questions. There is simply no evidence that Martin's waiver was anything other than knowing, intelligent and voluntary. His physical discomfort, which he himself declared did not require medical attention, is not a basis for finding that he did not comprehend the seriousness of those rights which he waived, or that he was in any way coerced into relinquishing them. After reviewing the video of Martin's interview with police, the Court finds that his statements were voluntary, and made after a knowing, intelligent, and voluntary waiver of his Miranda rights. Therefore, this objection must also be **OVERRULED**.

### III.  CONCLUSION

For the reasons stated herein, Martin's objections to Judge Vineyard's Report and Recommendation are **OVERRULED**. The Court **ORDERS** that the Magistrate Judge's Report and Recommendation (Doc. No. 34) is **ADOPTED**. Notice setting trial will be entered separately.

**SO ORDERED**, this 6th day of August, 2015.

_____
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE